UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ANTHONY MITCHELL,                    Criminal No. 03-300-42-MAP

    Petitioner:

v.

            05-30122-MAP

UNITED STATES OF AMERICA,

    Respondent:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

OF 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE,

OR CORRECT SENTENCE IMPOSED

Ground One's Legal Analysis [Argument]

The law governing the acceptance of a guilty plea under Fed.R. Crim. 11 is well established. A plea **cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.**" McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). See also United States v. Broce, 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

United States Court of Appeals For The

First Circuit Standard of Review

In the case of United States v. Ruiz-Del-Valle, 8 F.3d 98 (1st Cir. 1993), where the Court allowed a defendant to withdraw [her] guilty plea because she put the court on notice that she did not understand the nature of the charges against her. Id. at 103. Herein, the instant Petitioner wishes to bring to the Court's attention that his counsel, Mr. Yelle, has failed repeatedly to provide the Petitioner with xerox copies of his Rule 11 Hearing

colloquy and likewise his Sentencing Hearing Transcript despite the Petitioner's repeated requests to do so. Without these aforementioned documents the Petitioner is hampered in his ability to demonstrate that the nature of the charges against him was, in fact, not clearly explained to him by (1) his counsel, (2) the district court judge, and (3) the Government's prosecutor as well. Likewise, the Petitioner would equally be hampered in his efforts to demonstrate that he, in fact, comprehended accurately the elements of the offenses charged.

### The Record Failed to Disclose A Factual Basis For the Petitioner's Guilty Plea

Although it is well settled in this Circuit that "[E]ven if a record discloses a failure to establish a factual basis for the guilty plea, ... it would be of no moment, [pursuant to United States v. Zorrilla, 982 F.2d 28, 30 (1st Cir. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993),] where it was held that lack of prejudice resulting from such failure "is fatal to appellant's claim" herein Petitioner can point to substantail prejudice, pursuant to Alaniz v. United States, 351 F.3d 365, 367-68 (8th Cir. 2003) (quoting Johnson v. United States, 278 F.3d 839, 844 (8th Cir. 2002); Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003); and Strickland; plus Glover v. United States, 531 U.S. 198, 202-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (where it was stated that "[a]n error increasing a defendant's sentence by as little as six months can be prejudicial within the meaning of Strickland.

Although there may be some question as to whether the district court had the discretion to depart downwards under the criteria

articulated in <u>United States v. Rivera</u>, 994 F.2d 942 (1st Cir. 1993), there is a clear basis for finding that the sentencing judge did not fully understand its authority under the Sentencing Guidelines.

I. Petitioner Did Not Conspire With Jerome Jody Clark To Possess With The Intent To Distribute Cocaine Base Nor Did Petitioner Conspire With Clark to Distribute And Controlled Substance, Especially Cocaine Base "Crack"

As a matter of law, Petitioner, Anthony Mitchell could not have conspired with Jerome Jody Clark to (1) Possess With the Intent to Distribute Cocaine Base "Crack" (e.g., Petitioner was merely present when the (CW) approach Clark to purchase cocaine base "crack" and Clark not having any handy in his possession agreed by himself only to sell the (CW) one-half ounce of "crack" cocaine for $550.00. Anthony Mitchell after speaking with Clark subsequently entered the (CW's) car's back seat, however, Mitchell said nothing to the (CW) or to Clark at that point in time. When the (CW) following Clark's directions stopped his car outside of 70 Mill Street in Springfiled, Massachusetts, Mitchell got out and went into the house. [Notably, at that point, there was no agreed upon conspiracy between Clark, Mitchell and/or the (CW); only a "buyer-seller" relationship between Clark and the (CW)], as demonstrated by the (CW)'s counting out $450.00 and giving it to Clark. Mitchell wasn't included in any "buyer-seller" relationship, and certainly wasn't involved in any conspiratorial agreement with Clark, nor could he have been involved in a conpiracy with the (CW) either. While Clark then used the (CW's) cell phone to make a call [?] Mitchell came out of the house he

had entered earlier and got back into the back seat, while Clark got back into the front seat. [Here, it was alleged, but never proven by voice analysis that] Mitchell said his [?] source of supply (SOS) did not want to do the deal because he [?] did not know the (CW). **The Petitioner's counsel's failure to do an independent factual, forensic, and legal investigation, via an ex-parte application for the services of an Expert Witness in audio vocie analysis, which could have proved exculpatory as to Mitchell's alleged statements was deficient within the meaning of** <u>Strickland</u>.

The following statement of proof by the Government's prosecution is not dispositive:

> "[M]itchell got out of the car again and went back into the house. Mitchell returned several minutes later and the (CW) drove away. Clark reached back towards Mitchell and got the drugs [although it omits whether or not Clark actually received the drugs from Mitchell himself, or from the area in which Mitchell was sitting] then put them into his pocket...."
>
> "Clark and Mitchell talked about the SOS being worried about the police. [Again, defense counsel's failure to verify this by use of an Expert Witness on voice analysis, was inadequate and ineffective assistance of the counsel guaranteed by the Sixth Amendment to the Federal constitution of the United States]..."
>
> "Clark then handed the drugs to the (CW) but said he wanted to take them home and weigh them so the (CW) gave the drugs back to Clark [Which is odd, considering he'd already paid Clark $450.00 for the drugs].
>
> The (CW) followed clark's directions to Chester Street in Springfield and Clark got out of the car and went into the house..."
>
> "While they were waiting, Mitchell gave the (CW) his cell phone number and Mitchell said he <u>could</u> sell the (CW) two 8 balls.1/

---

1/ This conclusively shows that Mitchell wasn't involved in the (a) conspiracy, nor the (b) "buyer-seller" relationship of the See next page, footnote

Finally, for the offense(s) charged, where only 12.1 grams of cocaine base "crack" was recovered as a result of the undercoer (CW) purchase from Jerome Jody Clark for the price of $450. the applicable Guideline range was 63 months to 78 months, so the 92 months Petitioner received exceeded the "statutory maximum" for the offense conduct. According to <u>Bousley</u>, "[I]f at the time of the plea, neither the accused, nor his counsel, nor the District Court correctly understood the essential elements of the crime with which he was charged, then the plea is invalid under the Federal Constitution..." 2/

---

1/ [Cont'd] charged conduct in the Grand Jury original Indictment but was merely an independent seller of controlled substances, unafiliated with Clark or anyone else for that matter.

2/ See, <u>Bousley v. United States</u>, 523 U.S. 614, 140 L.Ed.2d 828, 118 S.Ct. 1604 (1998).