UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED

ANTHONY MITCHELL,
       Petitioner
)
)
)

v.
)
)

CA 05-30122-MAP
CR 03-30042-MAP

)
UNITED STATES OF AMERICA,
       Respondent.
)
)
)

### GOVERNMENT'S RESPONSE TO ANTHONY MITCHELL'S MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT HIS SENTENCE

The United States of America, by its undersigned attorneys, submits this memorandum in response to Anthony Mitchell's 28 U.S.C § 2255 Motion and Memorandum.

I.    Background

On October 23, 2003, the defendant was indicted by a grand jury in a two-count Indictment along with one co-defendant. Count One charged that the defendants conspired to distribute five grams or more of cocaine base on April 22, 2003 in violation of 21 U.S.C. § 846. The defendant was charged in Count Two with distributing five grams or more of cocaine base on April 22, 2003, in violation of 21 U.S.C. § 841(a)(1). On April 26, 2004, Anthony Mitchell pled guilty to Counts One and Two of the above referenced Indictment. Mitchell was responsible for a total of 12.1 grams of cocaine base in the form of crack cocaine. There was no plea agreement. On August 18, 2004, he was sentenced to 92 months in prison on both counts.

The defendant now seeks to have his sentence vacated, his conviction reversed and to be released from custody.  He now alleges that his attorney J. Jeffrey Yelle, Esq. was ineffective. Mitchell relies on several issues including the fact that "the charges against him [were] ... not clearly explained to him by ... his counsel."  Memorandum at 2.  Mitchell also alleges his counsel was ineffective because of his "failure to file an ex-parte motion for Expert Witness-Voice Analysis", based upon the fact that "there was no actual proof beyond a reasonable doubt that the alleged voice heard on the audio recording device is that of Anthony Mitchell."  Motion at 5.  He also alleges that he "requested counsel to file a timely notice of appeal on his behalf...[and] counsel absolutely did not file any notice of appeal..."  Motion at 5.

Further, Mitchell alleges that there was no factual basis for his guilty plea, and that in particular there was no evidence that he conspired with Jerome Clark to distribute crack cocaine. Memorandum at 2-3.  Mitchell also argues that the sentencing guidelines were improperly calculated.  Memorandum at 5.

The government responds below to each of these issues.  For the reasons set forth herein, the Court should deny the defendant's motion.

II. Facts

In June of 2002, a cooperating witness (CW) began

2

cooperating with the FBI's Western Massachusetts Gang Task Force
(GTF).[1]  The CW consented to the recording of his conversations
and a video camera was installed in his car to capture the drug
deals on video tape which includes an audio recording.

On April 22, 2003 the CW met the GTF agents and was given
$1000 and a recording device.  The CW drove to Edmund Wynn Circle
in Springfield to look for Lee Henry but could not find him.  On
his way back to meet the agents the CW saw Jerome Clark who got
into the car and can be clearly seen on the camera.  Clark agreed
to sell the CW one-half ounce of crack cocaine for $550.  The CW
said he would be back in 20 minutes and Clark got out of the car.
The CW called the agents and was told to make the deal.  The CW
went back and picked up Clark.  Clark gave the CW directions
which he followed.  The CW stopped the car and both the CW and
Clark got out of the car.  The CW got back into the car and Clark
can be heard talking to somebody outside the car.  Anthony
Mitchell got into the back seat.  Clark then got back into the
front seat and the CW followed directions from Clark.

The CW stopped the car outside 70 Mill Street in Springfield
and Mitchell got out of the car and went into the house.  The CW
counted out $450 and gave it to Clark.  Clark used the CW's cell
phone to make a call and got out of the car while talking on the

---

[1]The facts are taken from the Presentence Report and the
government's statement of facts at the April 25, 2004 Rule 11
hearing.

3

phone. Mitchell came out of the house and got into the back seat
and Clark got into the front seat. Mitchell said his source of
supply (SOS) did not want to do the deal because he did not know
the CW. The CW drove around the block while Clark and Mitchell
talked.

The CW parked in front of the same building, Mitchell got
out of the car again and went back into the house. Mitchell
returned to the car several minutes later and the CW drove away.
Clark reached back towards Mitchell and got the drugs then put
them into his pocket. Clark and Mitchell talked about the SOS
being worried about the police. Clark then handed the drugs to
the CW but said he wanted to take them home and weigh them so the
CW gave the drugs back to Clark. The CW followed Clark's
directions to Chester Street in Springfield and Clark got out of
the car and went into the house. While they were waiting,
Mitchell gave the CW his cell phone number and Mitchell said he
could sell the CW two 8 balls. Clark got back in the car, gave
the CW the crack and said the crack weighed 5.5 grams. Clark got
out of the car and Mitchell got into the front seat. The CW
dropped Mitchell off at a restaurant then met the agents and gave
them the crack and $550. The bag contained 12.1 grams of
cocaine base in the form of crack cocaine.

III. Mitchell's § 2255 Claims Have Been Previously Waived

Mitchell has defaulted on these issues and can not now raise

4

them.  A defaulted claim generally cannot be heard on collateral review unless the applicant shows "cause" for each failure to raise the claim and "actual prejudice" resulting from the error alleged.  United States v. Frady, 456 U.S. 152, 170 (1982).

This "cause and prejudice" standard requires Mitchell to show not only that "some objective factor external to the defense" impeded his efforts to raise the issue as required by each relevant procedural rule, Coleman v. Thompson, 501 U.S. 722, 753 (1991), but also that the error he alleges "worked to his actual and substantial disadvantage, infecting his entire trial with error," Frady, 456 U.S. at 170 (emphasis in original).  The cause and prejudice standard is more difficult to establish than the plain error standard.  Frady, 456 U.S. at 164-66.  Further, Mitchell must make a separate showing of cause for each procedural default, that is one showing of cause for the failure to raise the claim in the district court, and another for the failure to raise the claim on appeal.  However, the defendant is not required to bring ineffective assistance of counsel claims on direct appeal.  See Massaro v. United States, 123 S. Ct. 1690, 1693 (2003).

Because Mitchell has not made the requisite showing, the Court should deny his § 2255 claims, with the exception of his ineffective assistance of counsel claims, without reaching the merits of his arguments.

IV.    Mitchell's Attorney was not Ineffective

The defendant alleges that his counsel was ineffective for various reasons set forth above.  These arguments must fail, however, because Mitchell has failed to prove by a preponderance of the evidence[2] that Attorney Yelle's performance was not reasonably professional or that his performance undermined confidence in the outcome of the case.

In Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994), the First Circuit explained the basic principles underlying ineffective assistance of counsel claims

> The Sixth Amendment provides that criminal defendants are entitled to the effective assistance of trial counsel.  "But 'the Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather the performance standard is that of reasonably effective assistance under the circumstances then obtaining.' . . . The habeas court must evaluate the [challenged] conduct from counsel's perspective at the time, considering the totality of the circumstances before it, and making every effort to eliminate the distorting effects of hindsight." . . . We indulge "a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  Besides bearing the burden of proving that trial counsel's performance was not within this wide range of reasonable professional assistance, [the movant] must establish that counsel's performance was sufficiently prejudicial to undermine confidence in the outcome of the trial.

Id. (Citations omitted).

Seen through the filter of the First Circuit's jurisprudence

---

[2]The burden is on Mitchell to demonstrate his counsel's ineffectiveness by a preponderance of the evidence.  Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).

on ineffective assistance of counsel habeas motions, Mitchell's complaints about his counsel do not have merit.

The defendants' first allegation of ineffective assistance of counsel, that the charges against him were not explained to him by his attorney are contradicted by the defendant's own words at the Rule 11 hearing. The Court asked the defendant if he "had a chance to talk about the nature of the charges and talk about any possible defenses you might have to these charges..." to which the defendant responded "yes." Tr at 7. The Court also asked the defendant if his attorney had "gone over the things that the government would have to prove in order to get a conviction of you in this case..." to which the defendant responded "yes." Id.

The Court then read both counts of the Indictment to the defendant and asked him if he was pleading guilty because he in fact committed both offenses and the defendant answered in the affirmative. Tr. at 10-11. Finally, the Court asked the defendant if he "had sufficient time to discuss this matter fully with Mr. Yelle before offering your plea of guilty today" and the defendant answered "yes." Tr. at 13. At the conclusion of the hearing the Court found that "I'm convinced that [Attorney Yelle and the defendant] have in fact conferred concerning all aspects of the charges against Mr. Mitchell, including any defenses he might have" ... and "I find that the pleas are voluntarily made

7

with full knowledge of the charge and full knowledge of the consequences of the pleas." Tr. at 26-27. The defendant's attorney did not fail to explain the charges to the defendant.

The defendant also alleges that his attorney was ineffective because he failed to file an ex-parte motion for an expert to do a voice analysis. The defendant alleges that this would have exonerated him because, he claims, his voice is not on the recording. Regardless of whether the defendant made such a request of this attorney,[3] it would have been to no avail because as set forth at the Rule 11 hearing the defendant's face was clearly captured on video tape inside the CW's car participating in the drug deal. Tr. at 19-23. Therefore, Attorney Yelle was not ineffective on this ground.

Finally, Mitchell states that he requested Attorney Yelle to file a direct appeal. The defendant cites no issues which would have been addressed in the direct appeal and, given that he plead guilty and received a sentence at the low end of the guideline range, there appear to be no issues that have any merit. Therefore, this allegation of ineffective assistance is without merit.

V.   There was a Factual Basis for the Defendant's Guilty Plea and the Plea was Voluntarily made with an Understanding of

---

[3]On June 29, 2005 the undersigned spoke to Attorney Yelle and sent him a copy of Mitchell's § 2255 petition. Attorney Yelle was invited to submit a written response to Mitchell's allegations but to date no submission has been received.

the Nature of the Charges

The core concerns of Rule 11 are to ensure that a defendant is accurately appraised of the charges against him, and that he sufficiently understands them. If the Court fails to satisfy these concerns, the guilty plea may be vacated. However, in this case there was no error by the Court in the Rule 11 colloquy, and since the defendant was sufficiently informed of the charges against him, his guilty plea should not be vacated. See United States v. Ribas-Dominicci, 50 F.3d. 76, 78 (1st Cir. 1995). Furthermore, any possible technical violation of Rule 11 is not sufficient to uphold a challenge. Id. at 78. ("[T]echnical violations of Rule 11 do not count."). In this case, because there were no violations of Rule 11, the guilty plea entered by the defendant should be upheld.

In determining whether to allow a plea to be set aside, a court considers a number of factors:

> In deciding whether an asserted reason for withdrawal meets the Rule 32(e) standard, the district court must look to the totality of the circumstances, paying special attention to whether the plea was knowing, voluntary, and intelligent under Rule 11... The inquiry is essentially open-ended, however. We have often recognized several other factors that may enter the decisional calculus of the trial court. These include the force of the defendant's proffered reason [for withdrawal]; the timing of the request; [and] the defendant's assertion of legal innocence (or the lack of such an assertion)... The court may also consider whether there has been a plea agreement....If the defendant

9

> shows sufficient reason for withdrawing the
> plea, the court must also consider any
> possible prejudice to the government.

United States v. Alvarez-Del Prado, 222 F.3d 12, 15 (1st Cir.

2000)(internal citations and quotation marks omitted).

When the defendant's plea withdrawal claim is based on a

claim that the plea lacks a factual basis in that the government

failed to recite necessary details at the plea colloquy, this

Court's focus is on whether the defendant's plea was voluntary

and whether his substantial rights were affected by the omission,

not whether the government proved him guilty beyond a reasonable

doubt at the time of the plea colloquy.  United States v. Japa,

994 F.2d 899, 904 (1st Cir. 1993).  In assessing prejudice, the

Court has wide range in what it may consider and may look, for

example, at the government's statements at the plea hearing, the

uncontested facts set out in the PSR, and other proceedings in

the case.  See, e.g., United States v. Zorrilla, 982 F.2d 28 (1st

Cir. 1992); United States v. Field, 39 F.3d 15, 17 (1st Cir.

1994).

The defendant's understanding of the charges pursuant to

FRCP 11(c) is a core concern of Rule 11.[4]  United States v.

---

[4]Rule 11(c) states in pertinent part:

> Advice to the Defendant.  Before accepting a
> plea of guilty ..., the court must address
> the defendant personally in open court and
> inform the defendant of, and determine that
> the defendant understands, the following:

10

Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995).  A total failure to address a Rule 11 "core concern" mandates that the guilty plea be set aside.   Id.  In the absence of such a "total failure," the question to be determined is whether any deficiency in the Rule 11 hearing affected the defendant's "substantial rights."  Id. The First Circuit has said:

> In determining whether there has been a core violation, we review the totality of the circumstances surrounding the Rule 11 hearing, rather than apply a 'talismanic test.'  What is critical is the substance of what was communicated by the trial court, and what should reasonably have been understood by the defendant, rather than the form of the communication.  At a minimum, Rule 11 requires that the trial court address the defendant personally in open court to ascertain that his plea is 'voluntary and intelligent.'
>
> In the absence of a total failure to address one of  Rule 11's core concerns, the question is whether irregularities in the plea-taking proceeding affected the defendant's 'substantial rights.'

Cotal-Crespo, 47 F.3d at 4-5 (internal citations omitted). This Court has also observed that:

> The manner in which the charge is explained and the method for determining the defendant's understanding necessarily vary from case to case depending upon the capacity of the defendant and the attendant circumstances.  In making that determination, the court should not exalt form over substance but should look to the reality of

---

(1)  the nature of the charge to which the plea is offered...

the situation as opposed to the ritual.

United States v. Allard, 926 F.2d 1237, 1245 (1st Cir. 1991)
(internal citations omitted).

In this case, the Court read both counts of the Indictment
to the defendant during the Rule 11 hearing. Tr. at 10-11. The
Court asked the defendant if he was pleading guilty because he
was in fact guilty of the crimes charged in the Indictment, and
the defendant admitted that he in fact did commit the offenses
charged. Id. Further, the government read a detailed statement
of the facts, including the fact that each of the relevant counts
involved cocaine base in the form of crack cocaine, which was
sufficient to cover the elements of the offenses and the
defendant's participation in the offenses. Tr. at 19-24. The
Court then asked the defendant and his attorney if either wanted
to "comment on those facts" and both responded in the negative.
Tr. at 24. Also, a similar version of the facts was submitted to
the probation department for the Presentence Report, ¶¶ 9-13, and
the defendant did not object to those facts.

The facts set forth in the PSR and during the Rule 11
hearing demonstrate that there was a factual basis for the
defendant's participation in both charged crimes. The defendant
got out of the back seat of the car, went into an apartment for a
short time, can be seen on the video tape getting back into the
car and handing the co-defendant the crack cocaine. The co-

defendant then gave the crack to the CW who had given the co-defendant the buy money.  The evidence in this case overwhelmingly demonstrated the defendant was guilty of distributing crack cocaine and conspiring to do so.

VI.   The Sentencing Guidelines Were Properly Calculated

        The defendant plead guilty to distributing 12.1 grams of cocaine base in the form of crack cocaine.  The base offense level therefore was 26 and with a three level reduction for acceptance of responsibility the total offense level was 23.  The defendant's lengthy criminal history resulted in a total of 13 points which is in criminal history category VI.  The resulting guideline range was 92-115 months and the defendant received a sentence at the bottom of the range.  There was no error in the calculation of the defendant's guideline range.

VII.    Conclusion

        For the reason set forth above, the defendant's motion to vacate, set aside or correct his sentence should be denied.


                                    Respectfully submitted,

                                    MICHAEL J. SULLIVAN
                                    UNITED STATES ATTORNEY

                                    by: _____
                                        TODD E. NEWHOUSE
                                        Assistant U.S. Attorneys


                    CERTIFICATE OF SERVICE

                                13

Hampden,  ss.                          Springfield, Massachusetts
                                       September 13, 2005

        I, Todd E. Newhouse, Assistant U.S. Attorney, do hereby
certify that I have served, by first class mail, a copy of the
foregoing, to Anthony Mitchell, pro-se, Reg. No. 90708-038,,USP
Lewisburg, P.O. Box 1000, Lewisburg, PA 17837.

                                       TODD E. NEWHOUSE
                                       Assistant U.S. Attorney

14